UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00213-RSE

**JOHN J. GOLDEN**                                                                                                        **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL,** *Acting*
*Commissioner of Social Security*                                                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security ("Commissioner") denied John J. Golden's ("Golden") application for disability insurance benefits. Both Golden (DN 19) and the Commissioner (DN 22) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 16).

### I. Background

John J. Golden is 44 years old and lives with his daughter. (Tr. 521, 651). Golden has a high school education, as well as some vocational training at Elizabethtown State Vocational Technical School for welding.[1] (Tr. 653). Golden has past work experience as a material handler,

---

[1] While this information comes from the actual transcript of the original hearing, it must be noted that the Disability Report, Form SSA-3368, shows that Golden completed one year of college and has not completed any type of vocational schooling. (Tr. 196).

injection molding machine operator, welding machine operator, and saw operator. (Tr. 530). He claimed he has not worked since September 4, 2012, the amended onset date, due to extreme pain in his back, shoulders, knees, and wrists. (Tr. 655). Golden claimed that he had continuously been looking for a job since the onset of this pain, and might have been able to work if he had found a suitable position. (*Id.*). Golden further contended that this pain gave him great difficulty in standing and walking, even though he was able to perform some tasks around the house. (Tr. 665).

Golden applied for disability insurance benefits ("DIB") from the Social Security Administration under Title II, claiming he became disabled on January 15, 2009 because of injury to both shoulders. (Tr. 167). His application was denied initially (Tr. 78) and again on reconsideration. (Tr. 110). Administrative Law Judge George Jacobs conducted a hearing in Louisville, Kentucky, on March 13, 2014. (Tr. 16). He later issued an unfavorable decision on April 24, 2014. (Tr. 29). After the Appeals Counsel denied review (Tr. 1), Golden filed suit in federal court. Thereafter, the parties jointly moved to remand the case, and remand was ordered by this Court on August 8, 2016. (Tr. 637).

On remand, the Appeals Counsel ordered a new hearing. (Tr. 640). A new hearing was held in front of Administrative Law Judge John Price ("ALJ Price") in Louisville, Kentucky, on May 26, 2017. (Tr. 511). Golden, with counsel, attended the hearing and testified that despite shoulder and knee surgery, injections, and continued physical therapy since the last hearing, he believed his condition had worsened. (Tr. 516). An impartial vocational expert also testified at the hearing. (Tr. 511). ALJ Price issued an unfavorable decision on August 2, 2017. (Tr. 501).

ALJ Price applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Golden has not engaged in

2

substantial gainful activity since January 15, 2009. (Tr. 486). Second, Golden has the following severe impairments: "degenerative disc disease; degenerative joint disease of the knees and shoulders; carpel tunnel syndrome; obesity; congestive heart failure; anxiety and mild depression[.]" (*Id.*). Third, none of Golden's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 487). Between the third and fourth steps, ALJ Price found Golden has the residual functional capacity to perform "less than the full range of sedentary work" with the following limitations:

> The claimant could lift 10 pounds frequently and 20 pounds occasionally; could sit for 6 of 8 hours total; and stand and/or walk for a total of 2 hours in an 8-hour workday. The claimant needs a cane to walk. The claimant should not push or pull with the legs; he can frequently but not constantly reach and perform fine and gross manipulation; but should avoid overhead work, concentrated vibrations, climbing of ladders, ropes, or scaffolds, hazards like unprotected heights, crawling, and kneeling. The claimant can occasionally bend and stoop. The claimant can have occasional interaction with the general public and he has the ability to understand, remember, and carry out simple job instructions but the work should not involve fast pace production demands.

(Tr. 489-90). Fourth, Golden is unable to perform his past relevant work. (Tr. 499). Fifth and finally, considering Golden's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 500).

Based on this evaluation, ALJ Price concluded that Golden was not disabled, as defined in the Social Security Act, from January 15, 2009 through the date of the decision. (Tr. 500). Thereafter, Golden filed exceptions to ALJ Price's decision. Upon review, the Appeals Council concluded that the exceptions were without merit and the decision was supported by substantial evidence. (Tr. 473). At that point, the denial become the final decision of the Commissioner, and Golden sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Golden mounts two challenges to the Commissioner's decision. First, Golden argues that ALJ Price "failed to adequately assess [his] upper extremity limitation, leaving his RFC unsupported by substantial evidence." (DN 19-1 at p. 13). This argument concerns findings 5 and 10. Golden's second argument alleges that "the case was adjudicated by an unconstitutionally-appointed ALJ, and the matter should be remanded for a new hearing with a different ALJ." (*Id.* at p. 17). This argument concerns the decision in its entirety.

A. Finding No. 5 – Residual Functional Capacity

Golden argues that ALJ Price's Finding No. 5, the residual functional capacity ("RFC") determination, is unsupported by substantial evidence. Specifically, Golden takes issue with ALJ's analysis of Golden's upper extremity limitations. The RFC determination is the administrative law judge's ultimate determination of what a claimant can do despite his physical or mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1. Dr. Gale-Dyer's Favorably-Weighed Opinion

Golden's main contention is that ALJ Price "*has not adequately explained* his interpretation of Dr. Gale-Dyer's favorably-weighed opinion, specifically as it related to [Golden's] upper extremity limitations." (DN 19-1 at p. 13) (emphasis added). Instead of arguing that improper weight was given to Dr. Gale-Dyer's opinion, Golden ultimately challenges the "reason-giving" requirement. (DN 19-1 at p. 14-15). Here, Golden relies on *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir. 2009). (*Id.*). In *Blakley*, the Sixth Circuit held that "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's *treating source's opinion*." *Blakley*, 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)) (emphasis added). Furthermore, "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5). "Failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given *denotes a lack*

5

*of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407 (internal quotations and citations omitted).

Not only is *Blakley* distinguishable from this case, ALJ Price provided an adequate explanation of why great weight was given to Dr. Gale-Dyer's opinion. *Blakley* dealt with providing adequate reasons for why a *treating* source's opinion was given "less than controlling weight[.]" *Id.* at 409. In fact, the Sixth Circuit ultimately held that "the ALJ violated Agency regulations by failing to adequately explain the weight given to the *treating* physicians in her decision." *Id.* at 407 (emphasis added). Dr. Gale-Dyer was not a treating physician. Moreover, all other medical opinions were accounted for and thoroughly discussed in ALJ Price's decision, unlike the ALJ's decision in *Blakley*. *Id.* Therefore, Golden's reliance on *Blakley* is misguided.

Despite Golden's contention that ALJ Price inadequately explained his interpretation of Dr. Gale-Dyer's opinion, the decision shows otherwise. Specifically, ALJ Price explained that Dr. Gale-Dyer's opinion stated that "[Golden] 'may have difficulties' with any type of overhead activities." (Tr. 498). Furthermore, ALJ noted that "[w]hile this opinion does not outline[] the level of 'difficulty' the claimant would have in the areas outlined, neither the opinion nor the consultative exam findings support greater limitation than assessed herein." (*Id.*). ALJ Price went on to conclude that the opinion was given great weight, "as the areas of limitation found in the opinion are consistent with the complaints and history of treatment as well as the longitudinal exam findings documented herein." (*Id.*).

Golden correctly asserts that "if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (DN 19-1 at p. 14) (citing SSR 96-8p). Golden contends that since "ALJ Price does not indicate reservation regarding any element of the opinion, other than stating that Dr. Gale-Dyer did not outline the level

of difficulty Plaintiff would have in the opined areas . . . the ALJ [fails to] explain why frequent reaching adequately addresses this limitation." However, "the ALJ must only say enough to allow the appellate court to trace the path of [his] reasoning." *Hutcherson v. Comm'r of Soc. Sec.*, No. 318-CV-00242-GNS-CHL, 2019 WL 4467651, at *5 (W.D. Ky. Sept. 18, 2019) (internal citations omitted). While Golden argues that "[t]he ALJ should have sought clarification instead of interpreting the raw data in deducing the consultative examiner's meaning," (DN at p. 17), ALJ Price's explanation, viewed alongside the entire record, adequately supports his RFC determination.

Specifically, the record substantially supports ALJ Price's decision, especially as it relates to Golden's upper extremity limitations, because Dr. Gale-Dyer's opinion is "consistent with the complaints and history of treatment[.]" (Tr. 498). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(4). Despite Golden's contention that Dr. Gale-Dyer's opinion should have led ALJ Price to include in his RFC a limitation to constant reaching and fine and gross manipulation, the record substantially supports why frequent reaching adequately addresses Dr. Gale-Dyer's concerns. In reading Dr. Gale-Dyer's opinion, he states that Golden "*may* have difficulties with any type of overhead activities[.]" (Tr. 980) (emphasis added). Since ALJ Price is entitled to "broad discretion in evaluating the medical evidence," the term "may" could be properly inferred to encompass frequent, but not constant, limitations. *Grundy Mining Co. v. Flynn*, 353 F.3d 467, 484 (6th Cir. 2003) (internal quotations and citations omitted).

Moreover, ALJ Price's decision adequately explained his analysis of Golden's shoulder impairments. Specifically, ALJ Price stated that "treatment has been effective and there is no evidence in the record that he could not work within the parameters of the above residual functional

capacity." (Tr. 492). This is also consistent with Dr. Gale-Dyer's examination notes, which state that Golden "was found to have full range of motion in all joints except for his left shoulder." (Tr. 979). Dr. Gale-Dyer concluded that there was "no deformity, redness, or tenderness noted in [Golden's] joints." (*Id.*). It is ultimately the final responsibility of the ALJ to weigh the medical evidence and decide the RFC. 20 C.F.R. § 404.1527(d)(1). The conclusion of the ALJ should be highly regarded because "[d]iscretion is vested in the ALJ to weigh all the evidence[.]" *Morris v. Comm'r of Soc. Sec.*, No. 2:18-CV-374, 2019 WL 2336074, at *3 (S.D. Ohio June 3, 2019) (quoting *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009). ALJ Price did not abuse his discretion in the present case. Therefore, the Court finds that ALJ Price's decision is substantially supported by evidence in the record.

2. Issues that "Unnecessarily Cloud Understanding"

Golden also buries a smaller argument within his discussion of why ALJ Price's RFC is unsupported. Specifically, Golden alleges that ALJ Price "includes issues in his analysis that unnecessarily cloud understanding of the process by which he reached his conclusion." (DN 19-1 at p. 13). Golden attacks ALJ Price's decision by arguing that he "copy and pasted" a sentence from the prior decision, "for which *neither* ALJ provides a citation." (DN 19-1 at p. 16). The sentence Golden attacks states that "[d]espite this imaging, the treating provider seemingly indicated the claimant's complaints of pain were out of proportion to this imaging. I note that a treating provider who reviewed the imaging indicated that 'we are not really sure what might be causing all of his pain.'" (*Id.*). As Golden points out, Nurse Greg Brandenburg's impression was "left shoulder pain chronic, possible impingement, possible rotator cuff pathology . . . we are not really sure what might be causing all of his pain." (Tr. 370). Golden contends that "this is not evidence of embellishment." (DN 19-1 at p. 16). Furthermore, Golden takes issue with both ALJs

8

writing: "A notation in the treating notes indicates radiculopathy; however, the testing cited is not in the record." (*Id.*). Here, Golden argues that "it is clear that the test occurred. What is unclear is whether the person conducting the test issued a written assessment of it. This is not sufficient to undercut professional notations of radiculopathy." (*Id.* at p. 27).

This argument is merely another way of attacking ALJ Price's RFC determination. Golden does not provide any specific evidence as to how these issues "unnecessarily cloud understanding of the process by which [ALJ Price] reached his conclusion." (*Id.* at p. 13). It must be noted that ALJ Price discussed Nurse Brandenburg's opinion in great length, ultimately giving it "little weight." (Tr. 497). ALJ Price adequately explained why the opinion was given little weight, stating that his opinion relied heavily on subjective complaints, was overly limiting given the objective evidence, and did not support the level of limitation assessed in the decision. (*Id.*). Moreover, ALJ Price, in discussing Golden's upper extremities, explained that "updated exams have noted normal strength, motor function, and reflexes in the upper extremities," and even attached these exams as exhibits. (Tr. 492). Importantly, "*[e]ven if the evidence could also support another conclusion*, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (emphasis added). The Court does not see any issues that undermine ALJ Price's decision since it is substantially supported by the evidence in the record.

B. Finding No. 10 – Vocational Expert Testimony

Stemming from Golden's contention that ALJ Price's RFC is unsupported is his brief argument that Finding No. 10 is also erroneous. Specifically, Golden argues that since ALJ Price erred in limiting him to frequent rather than constant reaching and handling, the vocational expert's testimony is misleading. (DN 19-1 at p. 17). Simply put, since ALJ Price limited Golden to

9

frequent reaching and handling, Golden argues that the vocational expert's testimony erroneously included positions that only required frequent reaching and handling. (*Id.*).

Golden only makes one direct attack on Finding No. 10. Golden notes that the "[vocational expert] testified that if an individual similar to [Golden] were further limited to occasional fine and gross manipulation, there would be no work." (DN 19-1 at p. 17) (citing Tr. 534). However, this response is taken out of context. Instead of relating to Golden's upper extremities, which is what Golden takes issue with here, this testimony came after ALJ Price asked the vocational expert, "What if the individual could only occasionally *use their hands to perform fine and gross manipulation*?" (*Id.*) (emphasis added). Golden goes on to point out that the positions found by the vocational expert all required frequent reaching and handling. (*Id.*). These jobs were ultimately accepted by ALJ Price at Step Five in Finding No. 10. (Tr. 500). However, Golden repeats his argument that since ALJ Price failed to "explain why frequent limitation in fine and gross manipulation are more appropriate than occasional limitations[,]" this led to "harmful error" in Step Five and/or Finding No. 10. (DN 19-1 at p. 17).

The burden of proof does not shift to the Commissioner to establish a plaintiff's ability to work until the fifth step of the evaluation. *Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 684 (6th Cir. 1992). At this fifth and final step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional and national economies that the plaintiff can perform, given his residual functional capacity. *See Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his limitations. *See Born v. Secretary of Health & Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990). In making a

determination at step five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience and *residual functional capacity*. 20 C.F.R. §§ 404.1520(f), 416.920(f).

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, *Bradford v. Secretary of Dep't of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments. *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the ALJ comes forward with evidence of job availability, the plaintiff must rebut that he can perform the identified job. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. *Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam). Moreover, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the plaintiff's unsubstantiated complaints. *Id*.

This argument, like above, essentially attacks ALJ Price's determination of Golden's RFC. However, as stated above, the record substantially supports ALJ Price's RFC determination. Moreover, ALJ Price properly completed Step 5 of the analysis. After determining Golden's RFC, ALJ Price posed a properly tailored hypothetical question to the vocational expert. Specifically, ALJ Price, in asking his hypothetical question to the vocational expert, made clear that Golden was limited to "[f]requent, but not constant reaching, and fine - - in performance of fine and gross manipulation." (Tr. 531). In response, the vocational expert noted that these limitations would eliminate Golden's past work. (*Id*.) The vocational expert did, however, list examples of current

jobs within the national economy that Golden could perform, such as inspectors, hand packers, and factory helpers. (Tr. 534). These findings were ultimately included in Finding No. 10 of ALJ Price's decision. (Tr. 500).

It is well established that "[a]n ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record." *Hardaway*, 823 F.2d at 927. As mentioned above, there is substantial evidence to support ALJ Price's determination that Golden should be limited to frequent, but not constant, limitations in regard to his upper extremities. Because of this, ALJ Price properly tailored his hypothetical question to account for Golden's impairments. In sum, substantial evidence supports the factual underpinnings of the hypothetical questions posed to the vocational expert. Consequently, because the vocational expert was able to identify a significant number of jobs which Golden could perform, without rebuttal evidence by Golden, the Commissioner met her burden. *See Blacha v. Secretary of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). Therefore, the Court finds that there is no harmful error since Finding No. 10 is supported by substantial evidence.

### C.  All Findings – Appointments Clause Claim

Golden also challenges the decision as a whole, arguing that ALJ Price was unconstitutionally appointed. (DN 19-1 at p. 17). Golden primarily relies on *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), arguing that "where only staff members of an Agency give an ALJ his/her position, the ALJ then has unconstitutionally assumed their position, and a valid challenge under the Appointments Clause exists." (DN 19-1 at p. 18). Moreover, Golden points out that the Social Security Administration, in the wake of *Lucia*, "has acknowledged their ALJs as inferior officers that were not constitutionally appointed when, on July 16, 2018, then Acting Commissioner Nancy Berryhill approved all appointments as her own" via Emergency Message EM-18003 REV 2.2.

(*Id.*). The Commissioner argues that this claim should be rejected because it was never raised during the administrative process. (DN 22 at p. 20).

A party "who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (citation omitted) (emphasis added). In the present case, the Commissioner "does not argue that SSA ALJs are employees rather than inferior officers." (DN 22 at p. 20, n.6). Therefore, the only question is whether Golden's challenge was timely. The Sixth Circuit has held that courts "generally will not hear issues raised for the first time on appeal." *City of Riverview v. Surface Transp. Bd.*, 398 F.3d 434, 443 (6th Cir. 2005). Even in the agency context, "a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal." *Maloney v. Comm'r of Social Security*, 480 F. App'x 804, 810 (6th Cir. 2012) (citation omitted).

The Commissioner correctly asserts that "in the wake of *Lucia*, 'the vast majority of district courts across the country' that have decided the issue—48 out of 50—have rejected attacks on the validity of an SSA ALJ's appointment where the claimant failed to make the constitutional challenge at the administrative level[.]" (DN 22 at p. 26) (citing *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR, 2018 WL 4344288, at *6 (N.D. Iowa Sept. 12, 2019). Moreover, this very Court has rejected the same argument Golden makes when a defendant fails to allege that "he either presented his Appointments Clause argument at his social security hearing or even mentioned the Appointments Clause at the hearing." *Mullins v. Berryhill*, No. 7:18-CV-002-JMH, 2019 WL 1339588, at *3 (E.D. Ky. Mar. 25, 2019). Similarly, Golden did not raise his Appointments Clause challenge during the administrative process. Instead, Golden first raised the issue in this Court. This failure to act does not constitute "a timely challenge to the constitutional validity of the appointment" under *Lucia.* 138 S. Ct. at 2055 (citation omitted). Accordingly, this

argument is without merit.

## ORDER

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

April 14, 2020

cc: Counsel of record